# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-00366-SCT

*MISSISSIPPI STATE TAX COMMISSION*

*v.*

*ANR PIPELINE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/15/1999 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BOBBY R. LONG |
| | GARY W. STRINGER |
| ATTORNEYS FOR APPELLEE: | JEROME C. HAFTER |
| | JENNY M. VIRDEN |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 10/31/2001 |
| MOTION FOR REHEARING FILED: | 11/14/2001; denied 2/14/2002 |
| MANDATE ISSUED: | 2/21/2002 |

**BEFORE PITTMAN, C.J., DIAZ AND EASLEY, JJ.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. ANR Pipeline Company (ANR) provides natural gas transportation services, storage, and balancing services to customers in interstate commerce, a portion of which is in Mississippi. Mississippi defines ANR as a public service corporation and requires it to be assessed by the Mississippi State Tax Commission (the commission).

¶2. On July 6, 1994, the commission issued a tentative 1994 ad valorem tax assessment of $10.6 million against ANR. ANR filed an objection, and a hearing was held. On November 9, 1994, the commission affirmed the tax assessment. On December 27, 1994, ANR appealed the commission's ruling to the Circuit Court of Washington County.

¶3. In July 1995, the commission issued a tax assessment of $11 million against ANR, and ANR objected. In November 1995, the commission affirmed the assessment, with adjustments, reducing the assessment to approximately $10.2 million. The adjustments were the result of an agreement relating to ANR's unit value, but not the allocation of that total value to Mississippi. ANR then appealed that decision, and the 1994 and 1995 cases were consolidated.

¶4. In December 1996, the cases were tried before the Washington County Circuit Court. In September 1999, the circuit court set aside the commission's order and adopted a new allocation method. The commission subsequently filed a timely appeal alleging that the circuit court erred in setting aside the commission's order and raising the following issues for consideration by this Court:

**I. WHETHER THE CIRCUIT COURT ERRED IN CONDUCTING A TRIAL DE NOVO.**

## II. WHETHER THE CIRCUIT COURT ERRED IN ITS DETERMINATION OF THE TRUE AND ASSESSED VALUE OF ANR'S PROPERTY IN MISSISSIPPI.

### FACTS

¶5. ANR has facilities in Arkansas, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Michigan, Mississippi, Missouri, Nebraska, New Jersey, Ohio, Oklahoma, Tennessee, Texas, Wisconsin, Wyoming and offshore federal waters. As of December 31, 1993, ANR had 12,657 miles of pipeline and 97 compressor stations. ANR also owns seven and leases eight underground storage facilities in Michigan.

¶6. In Mississippi, ANR has 375 miles of pipeline and two compressor stations with related equipment. Two 30 inch lines run from Greenville to Sardis to the Tennessee line and were built in 1956 and 1966. ANR also has 36 inch lines located in sections near the compressor stations. Those lines were built in 1972 and 1973. One compressor station is in Greenville and was built in 1956, and the other compressor station is in Sardis and was built in 1966.

¶7. ANR's total system original (gross) cost is approximately $3.4 billion, 83.8 million of which is allocated to Mississippi. After applying the depreciation percentages established by the Federal Energy Regulatory Commission (FERC) for regulated pipeline companies, ANR's net book cost is approximately $1.2 billion and the net book cost of ANR's property in Mississippi is approximately$19.8 million. FERC depreciates assets added to ANR prior to 1987 by location according to vintage year. Assets added to ANR after 1987 are depreciated on an individual asset basis and not by location.

¶8. Both parties stipulated that ANR's total unit value in both 1994 and 1995 was $1.4 billion. To assess the value of the property of corporations with property in more than one county or state, the commission has adopted a unit value approach. This approach involves valuing the company's property as a whole and then allocating a portion of that value to Mississippi.

¶9. To determine ANR's unit value, two approaches were used. First and foremost, an income approach was used. The income approach measures the value of ANR's property by capitalizing the property's income producing capacity or the income stream the property will generate in the future. The income producing capability is determined by measuring its net operating income (NOI). The NOI is calculated by taking gross revenues and deducting all operating costs, taxes *and* depreciation. The NOI is also influenced by FERC regulations. FERC determines the rates that can be charged by pipeline companies through rate proceedings. These regulations directly affect the value of ANR. FERC calculates ANR's "rate base" by deducting the amount of accumulated depreciation from the original cost of ANR's property. This figure is essentially the same as ANR's net book cost.

¶10. The second approach used to derive ANR's unit value is the cost approach. This was used to a lesser degree than the income approach in calculating ANR's unit value. The cost approach also relies primarily on the net book cost of a company. The theory of this approach is that a purchaser would not pay more for the property than it would cost to construct a duplicate of the property in its present condition. This takes into consideration any loss of earning capacity caused by government regulation.

¶11. The commission used a formula solely considering the undepreciated original (gross cost) of ANR's property in Mississippi to decide how much of ANR's total unit value should be allocated to Mississippi. The circuit court found that the formula used by the commission did not take into account the depreciation

of ANR's property and, thus, did not reflect the true value of ANR's Mississippi property. Therefore, the circuit court set aside the commission's assessment and rendered its own assessment using a formula that gives a fifty percent weight to original cost and fifty percent weight to ANR's net book cost. Using the circuit court's formula, ANR's Mississippi property is 2.0% of ANR's unit value, as opposed to the 2.4% the commission allocated to Mississippi. This results in a tax decrease of approximately $125,000.00.

## DISCUSSION

¶12. Findings of fact made by the trial judge will not be overturned on appeal unless they are manifestly wrong, clearly erroneous, or contrary to the overwhelming weight of the evidence. *City of Jackson v. Perry*, 764 So.2d 373, 376 (Miss. 2000); *Kight v. Sheppard Building Supply Inc.,*537 So.2d 1355, 1359 (Miss. 1989); *Hardy v. First Nat'l Bank of Vicksburg*, 505 So.2d 1021,1023 (Miss. 1987). The same standard of review applies in ad valorem tax cases as in other civil cases. *Rebelwood, Ltd. v. Hinds County*, 544 So.2d 1356, 1368 (Miss. 1989).

### I. WHETHER THE CIRCUIT COURT ERRED IN CONDUCTING A TRIAL DE NOVO.

¶13. The commission argues that the circuit court applied the wrong standard of review in conducting a trial de novo and should have applied the arbitrary and capricious standard. While most cases on appeal from an agency ruling are reviewed by the circuit court under an arbitrary and capricious standard, cases involving ad valorem taxes are governed by Miss. Code Ann. § 27-35-163 (Supp. 2001) which provides for a trial de novo. Unfortunately, Mississippi has not had the occasion to interpret the statute as to the issue of the standard of review. However, another statute, Miss. Code Ann. § 11-51-77 (1972), is substantially identical to Miss. Code Ann. § 27-35-163. The only difference is that § 11-51-77 pertains to ad valorem tax cases decided by Boards of Supervisors. There are several cases which interpret § 11-51-77 to require circuit courts to conduct trials de novo in ad valorem tax cases. *Lenoir v. Madison County,* 641 So.2d 1124 (Miss. 1994); *Rebelwood, Ltd. v. Hinds County,* 544 So.2d at 1358.

¶14. We find that Miss. Code Ann. § 27-35-163 should be applied literally to require circuit courts to try ad valorem tax cases anew as has Miss. Code Ann. § 11-51-77. The circuit court is affirmed as to this issue.

### II. WHETHER THE CIRCUIT COURT ERRED IN ITS DETERMINATION OF THE TRUE AND ASSESSED VALUE OF ANR'S PROPERTY IN MISSISSIPPI.

¶15. Both parties agree that art. 4 § 112 of the Mississippi Constitution of 1890 and Miss. Code Ann. § 27-35-301 et seq. (1995 & Supp. 2001), apply in this case. Miss. Const. art. 4 § 112 (1890) provides that property must be assessed "in proportion to its true value." Miss. Code Ann. § 27-35-50(1) (Supp. 2001), which applies to all classes of property, defines true value as the following, "True value shall mean and include, but shall not be limited to, market value, cash value, proper value and value for purposes of appraisal for ad valorum taxation."

¶16. The commission argues that it is illogical to consider the depreciation of ANR's Mississippi property because despite the property's age, it still fulfills its purpose and contributes to ANR's unit value. Therefore, using a net book cost analysis when determining ANR's property value in Mississippi is unfair because it does not reflect the true physical value of the property in Mississippi. The commission further argues that we should look to Miss. Code Ann. § 27-35-301, which allows ANR to be assessed as an operating unit.

Miss. Code Ann. § 27-35-309 provides that "the commission shall apportion the unit value in such a manner as will fairly and equitably determine the principal sum for the value thereof in this state." The commission asserts that its formula, which only takes into account the original cost, is "fair and equitable" and has been used for the past twenty years.

¶17. To substantiate this argument, the commission cites *Transcontinental Gas Pipe Line Corp. v. Bernards Township*, 545 A.2d 746 (N.J. 1988). In that case, the court rejected not only the net book cost valuation method and the original cost valuation method, but also the unit valuation method as a whole. The court adopted a method whereby the value of the property was determined by determining how much it would cost to replace the property in its current condition. While an examination of the court's dissertation on the flaws of net book cost valuation is interesting, it is not particularly helpful in this case because Mississippi uses the unit valuation method initially. It is illogical to use the unit value method at the first stage and not use it at the allocation stage.

¶18. This Court in *Mississippi Power Co. v. City of Laurel*, 201 Miss. 144, 29 So.2d 313 (1947), found that authority is vested in the tax commission to assess all of a utility company's operations in different counties as a constituent whole.

¶19. ANR argues that when depreciated property values are used to determine the unit value of a company with property in several states, and appreciated property values are used to determine the value of the company's property in one state, an unfair result is reached. This results in value from property not located in Mississippi being imported into the value of the Mississippi property because the Mississippi property is significantly depreciated.

¶20. We find that the circuit judge did not err when he used a formula which allocated 50% weight to both the net book value and the original cost. This formula addresses both the concern of undervaluing the property and the concern of overvaluing the property.

## CONCLUSION

¶21. The trial court's finding was not manifestly wrong, clearly erroneous, or contrary to the overwhelming weight of the evidence in this case. Therefore, we affirm the judgment of the Circuit Court of Washington County.

¶22. **AFFIRMED.**

**PITTMAN, C.J., SMITH, MILLS, WALLER AND EASLEY, JJ., CONCUR. McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. COBB, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. BANKS, P.J., NOT PARTICIPATING.**