# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00548-COA

**D. BROOKS HOLSTEIN**                                                                    **APPELLANT**

**v.**

**MARK NICHOLAS**                                                                               **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/17/2023 |
| TRIAL JUDGE: | HON. M. BRADLEY MILLS |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT THOMAS SCHWARTZ |
| | CARLEE VICTORIA DYMOND |
| | CHRISTIAN JANE'T STRICKLAND |
| ATTORNEYS FOR APPELLEE: | RONALD KEITH FOREMAN |
| | EDWARD E. LAWLER JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 01/14/2025 |
| MOTION FOR REHEARING FILED: | |

## CONSOLIDATED WITH

## NO. 2023-CA-00972-COA

**D. BROOKS HOLSTEIN**                                                                    **APPELLANT**

**v.**

**MARK NICHOLAS**                                                                               **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/02/2023 |
| TRIAL JUDGE: | HON. M. BRADLEY MILLS |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT THOMAS SCHWARTZ |
| | CARLEE VICTORIA DYMOND |
| | CHRISTIAN JANE'T STRICKLAND |
| ATTORNEYS FOR APPELLEE: | RONALD KEITH FOREMAN |
| | EDWARD E. LAWLER JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 01/14/2025 |

MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., LAWRENCE AND EMFINGER, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1. These two consolidated appeals derive from a judgment in Cuyahoga County, Ohio, obtained by D. Brooks Holstein against Mark Nicholas. Holstein enrolled the Ohio judgment in Mississippi in the Madison County Circuit Court and started collection proceedings. During the collection attempts, Nicholas's attorney paid Holstein's attorney $260,000.00. Subsequently, the Ohio judgment was set aside, and the circuit court ordered the money to be immediately returned to Nicholas. Holstein appeals claiming that the trial court erred in ordering the return of the $260,000.00 because it was a voluntary payment by Nicholas. After review, we reverse and remand for a evidentiary hearing to determine if the money paid was voluntary or part of the court-sanctioned collection attempts.

## FACTS AND PROCEDURAL BACKGROUND

¶2. On February 22, 2022, D. Brooks Holstein obtained a judgment against Mark Nicholas in the amount of $2,082,271.44 after a trial was held in the Court of Common Pleas in the Cuyahoga County, Ohio. On March 25, 2022, Holstein registered the Ohio judgment in the Madison County Circuit Court. After registering the judgment, Holstein began collection methods including serving writs of garnishment on numerous banks and on Nicholas's attorney at Tannehill, Carmean & McKenzie PLLC (Tannehill). The summons stated, "Failure to answer this writ of garnishment may result in a judgment by default against you, the garnishee-defendant; or that you may be ordered to deliver the properties in

2

your possession belonging to the judgment debtor to the court." The record contains proof of service on several of the writs of garnishment. It does not, however, have proof of service as to the Tannehill law firm.[1] Furthermore, no answer was filed by Tannehill, nor was an order entered to compel the law firm to make a payment pursuant to the garnishment.

¶3. Holstein's collection efforts also included an application for a charging order for the eight Mississippi limited liability companies (LLCs) Nicholas owned: (1) Madated, LLC; (2) N-B Properties, L.L.C.; (3) MMD Land Holdings, LLC; (4) River View Plantation, LLC; (5) Mark Nicholas, LLC; (6) Cotton Mill Hotel Group, LLC; (7) Nicholas Properties, LLC; and (8) Pecan Row Farms, LLC, pursuant to Mississippi Code Annotated section 79-29-705 (Rev. 2013), which reads as follows:

> On application to a court of competent jurisdiction by a judgment creditor of a member, referred to in this section as the "judgment debtor," the **court may charge** the **financial interest of the judgment debtor** with **payment of** the **unsatisfied amount of the judgment**, with interest (referred to in this section as a "charging order"). To the extent so charged, the judgment creditor has only the rights of an assignee of the financial interest, however, the judgment creditor shall have no rights to bring a proceeding under Article 11 of this chapter. This article does not deprive any judgment debtor of the benefit of any exemption laws applicable to the judgment debtor's financial interest.

(Emphasis added). Holstein sent a copy of the application for a charging order to Nicholas, Tannehill, and the eight LLCs.

¶4. On August 31, 2022, the circuit court entered the charging order and stated that the financial interest in the eight LLCs "shall be charged with the payment of the unsatisfied

---

[1] At the oral argument on this case, counsel for Nicholas did not dispute that service was received though the record has no proof of service, and the date of service was not known.

amount of the judgment in the amount of $2,082,271.44." The charging order required that a copy of the order be sent to Nicholas, Tannehill, and the eight LLC's within ten business days of its entry, and Holstein filed the certificate and proof of mailing of the charging orders.

¶5. On September 21, 2022, Nicholas's counsel at Tannehill sent a letter to Holstein's attorney with an enclosed check drawn on the firm's trust account in the amount of $260,000.00. The letter reads as follows:

> Dear Robert,
>
> As we discussed today by email, I am disbursing settlement funds deposited in our trust account by Mark Nicholas pursuant to ongoing settlement negotiations. As such, enclosed please find a check from the Tannehill Carmean & McKenzie, PLLC trust account in the amount of $260,000.00, payable to David Brooks Holstein.
>
> Please Confirm receipt of funds by email.
>
> If you have any questions in regard to this matter, please do not hesitate to contact our office.

¶6. On December 22, 2022, the Court of Appeals in Ohio reversed and vacated the Ohio judgment and remanded, holding that the Ohio trial court lacked personal jurisdiction over Nicholas which rendered the Ohio judgment void. On December 27, 2022, Nicholas filed a motion for relief from the Mississippi charging order seeking to recover the $260,000.00 that Tannehill had previously sent to Holstein's attorney. The Madison County Circuit Court entered an order granting Nicholas's motion. The court held in the order that the Ohio judgment Holstein registered in Madison County was "void *ab inito* and unenforceable against Nicholas as a matter of law." The court stated that the payment made by Tannehill

4

to Holstein was made under compulsion in direct response to the writ of garnishment, and a "payment made pursuant to a writ of garnishment is not voluntary." Thus, the court ordered Holstein to "immediately turn over to Nicholas in cash or cash equivalent, all monies, funds or other assets in which Nicholas held an interest including, but not limited to, monies, funds or other assets held in accounts by Tannehill Carmean ($260,000.00)." On May 10, 2023, Holstein appealed from the circuit court's April 17, 2023 order.[2]

¶7.    Holstein never returned the $260,000.00 to Nicholas. On June 13, 2023, Nicholas filed a motion to compel the turnover of funds. On August 2, 2023, the judge granted the motion, and Holstein filed a motion for reconsideration. In Holstein's motion, he argued that the payment was voluntary because Tannehill did not file a response to the writ of garnishment pursuant to Mississippi Code Annotated section 11-35-25 (Rev. 2019). The circuit court denied Holstein's motion for reconsideration. Holstein appealed from this August 2, 2023 order.[3]

¶8.    On appeal, Holstein raises three issues. First, he claims that the circuit court erred in

---

[2] On December 27, 2022, Nicholas had moved for relief in Madison County Circuit Court from the Ohio judgment to dismiss and for other relief. In his motion he asked the court to order "[a]ny and all monies, funds or other assets in which Nicholas held an interest and which were obtained by Holstein pursuant to the judgment should be immediately turned over in full to Nicholas." On April 17, 2023, the Madison County Circuit Court granted Nicholas's motion. The United States Supreme Court has held, "The right to recover what one has lost by the enforcement of a judgment subsequently reversed is well established. And, while the subject of the controversy and the parties are before the court, it has jurisdiction to enforce restitution and so far as possible to correct what has been wrongfully done." *Baltimore & O.R. Co. v. United States*, 279 U.S. 781, 786 (1929).

[3] On Holstein's motion, the Mississippi Supreme Court entered an order consolidating the two appeals.

ordering the settlement payment to be returned because it was voluntarily made pursuant to the "volunteer payment doctrine." Second, Holstein argues that the circuit court erred in granting Nicholas's motion to compel and denying Holstein's motion for reconsideration because the August 2, 2023 order to "turn over" funds constituted a mandatory injunction which was improperly granted in contravention of Mississippi Rule of Civil Procedure 65. Third, Holstein asserts that the circuit court lacked subject matter jurisdiction to enter an injunction.[4]

## STANDARD OF REVIEW

¶9. This Court "will not disturb the findings of a [trial court] unless it is shown the [trial court] was clearly erroneous and the [trial court] abused [its] discretion." *Howard v. TotalFina E & P USA Inc.*, 899 So. 2d 882, 888 (¶17) (Miss. 2005) (quoting *Hill v. Southeastern Floor Covering Co.*, 596 So. 2d 874, 877 (Miss. 1992); *Bell v. Parker*, 563 So. 2d 594, 597 (Miss. 1990)). A "circuit judge sitting without a jury is accorded the same deference with regard to . . . factual findings as is a chancellor." *Kight v. Sheppard Bldg. Supply Inc.*, 537 So. 2d 1355, 1358 (Miss. 1989) (citing *Hardy v. First Nat'l Bank of Vicksburg*, 505 So. 2d 1021, 1023 (Miss. 1987)). "When reviewing the factual findings of the circuit court sitting as the sole trier of fact in a bench trial, we apply the substantial-evidence standard of review." *Delta Reg'l Med. Ctr. v. Taylor*, 112 So. 3d 11, 23 (¶35) (Miss. Ct. App. 2012) (citing *Covington County v. G.W.*, 767 So. 2d 187, 189 (¶4)

---

[4] The first issue in this case is dispostive, and we do not to address the other two issues on appeal.

(Miss. 2000)). Questions of law, however, "are reviewed de novo." *Cummins v. Goolsby*, 255 So. 3d 1257, 1258 (¶8) (Miss. 2018). "As part of this de novo review, this Court may affirm the [circuit court's] judgment if the right result was reached, even if the [circuit court] reached the result for the wrong reason." *Id.* at 1258-59 (¶8).

## ANALYSIS

¶10.    Holstein asserts that the circuit court erred when it ordered him to return the $260,000.00 because the payment was a "settlement payment" and "voluntarily made pursuant to the volunteer payment doctrine." Nicholas, on the other hand, responded that the payment was not voluntary because Tannehill was legally compelled to make the payment in response to the court-ordered writ of garnishment. The factual issue that was before the trial court was to determine whether the payment made by Tannehill was voluntary or compelled by the court.

¶11.    A voluntary payment is one which is made "without compulsion or fraud, and without any mistake of fact, of a demand which the payor does not owe, and which is not enforceable against him[.]" *McLean v. Love*, 172 Miss. 168, 157 So. 361, 362 (1934). A voluntary payment cannot be recovered. *Id.* A "voluntary payor" is a "stranger or intermeddler who has no interest to protect and is under no legal or moral obligation to pay." *Indem. Ins. Co. of N. Am. v. Guidant Mut. Ins. Co.*, 99 So. 3d 142, 150 (¶22) (Miss. 2012). A payment may not be considered voluntary unless the payor had "full knowledge of all the facts which would render the payment voluntary." *Glantz Contracting Co. v. Gen. Elec. Co.*, 379 So. 2d 912, 917 (Miss. 1980). To determine whether payments are voluntary, we look at the facts of each

particular case. *Id.* at 917-18. The Mississippi Supreme Court has stated that "to recover indemnity it is necessary for the plaintiff to allege and prove that he was legally liable to the person injured, and consequently, paid under compulsion. Otherwise, the payment is a voluntary one for which there can be no recovery." *Sw. Miss. Elec. Power Ass'n v. Harragill*, 254 Miss. 460, 182 So. 2d 220, 223 (1966).

¶12.    A writ of garnishment is addressed in Mississippi Code Annotated section 11-35-1 (Rev. 2019), which states:

> On the suggestion in writing by the plaintiff in a judgment or decree in any court upon which an execution may be issued, that any person, either natural or artificial . . . is indebted to the defendant therein, or has effects or property of the defendant in his, her or its possession, or knows of some other person who is indebted to the defendant, or who has effects or property of the defendant in his, her or its possession, it shall be the duty of the clerk of such court to issue a writ of garnishment . . . .

Furthermore, section 11-35-23(1)(a) states that "all property in the hands of the garnishee belonging to the defendant at the time of the service of the writ of garnishment **shall** be bound by and **subject to** the lien of the judgment, decree or attachment on which the writ shall have been issued." (Emphasis added). Lastly, Mississippi Code Annotated section 11-35-31 (Rev. 2019) explains that a garnishee who is personally summonsed fails to answer the writ of garnishment as required by law and the garnishee "fail[s] to show cause for vacating it, the court shall enter a judgment against him for the amount of plaintiff's demand; and execution shall issue thereon."

¶13.    This Court's "job is to determine whether there was substantial, credible evidence supporting the [trial court's] findings such that the decision was not manifestly wrong or

clearly erroneous." *In re Allen*, 962 So. 2d 737, 741 (¶14) (Miss. Ct. App. 2007) (citing *In re Est. of Carter v. Shackelford*, 912 So. 2d 138, 143 (¶18) (Miss. 2005)). Substantial evidence is "evidence which affords a substantial basis of fact from which the fact in issue can be reasonably inferred." *Johnston v. Publ. Emps.' Ret. Sys.*, 827 So. 2d 1, 3 (¶7) (Miss. Ct. App. 2002). Substantial evidence requires that there be "more than a mere suspicion." *Publ. Emps.' Ret. Sys. v. Henderson*, 867 So. 2d 262, 264 (¶6) (Miss. Ct. App. 2004). "Trial and appellate courts have separate institutional roles," and "[o]ur role is that of an appellate court and not as triers of fact ab initio." *Tricon Metals & Servs. Inc. v. Topp*, 516 So. 2d 236, 239 (Miss. 1987).

¶14.    In *McLean v. Love*, 172 Miss. 168, 157 So. 361, 361 (1934), Hiawatha Milling Company was indebted to Merchants' bank in the sum of $79,540.40. A note was executed and secured by collateral from a cotton oil company. *Id.* Ten stockholders of the cotton oil company guaranteed the notes and secured them with collateral. *Id.* Hiawatha Milling Company went bankrupt and owed the bank the remainder of the two notes, which totaled $79,540.40. *Id.* The bank demanded that the ten guarantors pay the entire balance due. *Id.* Each guarantor paid their one-tenth portion of the full balance. *Id.* Subsequently, the cotton oil company bonds were sold for $20,000. *Id.* Two of the guarantors unsuccessfully demanded that they be reimbursed from the bonds sold and this case followed. *Id.* The Mississippi Supreme Court stated that

> a voluntary payment cannot be recovered back; and a voluntary payment
> within the meaning of the rule is a payment made, without compulsion or
> fraud, and without any mistake of fact, of a demand which the payor does not
> owe, and which is not enforceable against him, instead of invoking the remedy

or defense which the law affords against such demand, and when there has been no agreement between the parties at the time of payment, that any excess will be repaid.

*Id.* at 362 (citation omitted). The Mississippi Supreme Court found that the "parties knew all or a sufficiency of the material facts" and that the parties knew or had knowledge of sufficient facts to put them on notice that the bank did not intend to repay the guarantors. *Id.* The Supreme Court held that the payments were voluntary and that the guarantors could not be reimbursed. *Id.* at 362-63.

¶15. The Supreme Court also discussed voluntary payments in *Colony Insurance Co. v. First Specialty Insurance Corp.*, 262 So. 3d 1128 (Miss. 2019). Colony Insurance Company negotiated and paid a settlement claim for a wrongful death action. *Id.* at 1134 (¶16). The wrongful death action stemmed from an explosion at Omega Protein Corporation's facility in Moss Point, Mississippi. *Id.* Colony Insurance Company then filed a lawsuit against Omega's excesses-liability policy insurer, First Special, and sought reimbursement for the amount it had contributed to the settlement of the wrongful death suit against Omega. *Id.* at 1131 (¶6). The circuit court granted First Special's motion for summary judgment and dismissed the case. *Id.* The Mississippi Supreme Court found that Colony Insurance Company did not act under compulsion because it took "the legal position that an entity purporting to be its insured" was not covered by "its policy" but paid "a settlement demand in good faith to avoid potentially greater liability." *Id.* at 1135 (¶20). Therefore, Colony Insurance Company was precluded from recovering the amount it had paid. *Id.*

¶16. Unlike *McLean* and *Colony*, there are not enough facts in this case to determine

10

whether the $260,000.00 payment Tannehill made to Holstein's attorney was voluntary or compelled. Holstein argued that the letter proved that the payment was voluntary because it stated that the payment was made due to "settlement negotiations." Nicholas argued that the payment was compelled due to the court ordered writ of garnishment and charging order. The letter stated that Tannehill was "disbursing settlement funds deposited in our trust account by Mark Nicholas **pursuant to ongoing settlement negotiations**. . . ." (Emphasis added). However, the letter indicated that settlement negotiations were ongoing. There was no other documentation in the record regarding the terms of any actual settlement between the parties. The letter alone is not sufficient evidence to determine whether the payment was voluntarily made due to a settlement agreement or was describing the source of the fund as alleged by Nicholas.

¶17.　Conversely, the writ of garnishment and charging order are legal efforts to collect a debt. The record is void of any information as to whether the writ of garnishment was actually served on Tannehill. If Tannehill sent $260,000.00 before actual service, it could weaken the argument that the money was paid under compulsion of a legal order. The facts do show, however, that Holstein mailed a copy of the charging order to Tannehill and it was postmarked on September 2, 2022, which was before Tannehill sent the letter and check to Holstein's attorney. Without more information, it is impossible to determine if Tannehill paid the $260,000.00 in compliance with those legal collection efforts. Likewise, if Tannehill had money in its account (owned by Nicholas), the writ of garnishments or the charging order could legally compel them to pay the money to Holstein in compliance with Mississippi law

and in an effort to avoid the penalty for noncompliance.

¶18. This Court will look at the facts of each particular case to determine whether payments are made on a voluntary basis. *Glantz Contracting Co.*, 379 So. 2d at 918. Findings of fact here will only be reversed if they are manifestly erroneous or unsupported by substantial evidence in the record. *Bullock v. Thomas*, 659 So. 2d 574, 576 (Miss. 1995) (citing *In re Est. of Ford*, 552 So. 2d 1065, 1068 (Miss. 1989)). There are not enough facts to accurately determine what type of payment was made. It is impossible to determine how the trial court reached its conclusion because the record does not include facts that substantially support that conclusion. We reverse both the April 2023 and August 2023 orders and remand to the circuit court for an evidentiary hearing for substantial evidence to be provided in the record so the trial court can determine whether the $260,000.00 check was a voluntary settlement payment or a compelled payment under the law.

## CONCLUSION

¶19. There is not enough evidence to determine whether the $260,000.00 payment from Tannehill to Holstein was a voluntary payment or a compulsory payment. We reverse the orders appealed from in both cases and remand for an evidentiary hearing to determine whether the $260,000.00 check was a voluntary settlement payment or a compelled payment under the law.

¶20. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, McCARTY, EMFINGER AND WEDDLE, JJ., CONCUR. ST. PÉ, J., NOT PARTICIPATING.**